## Case No. 7,857a.

### KITTLE v. SCHNEIDER.

[See 30 Fed. 690.]

---

## Case No. 7,858.

### KITTREDGE v. CLAREMONT BANK et al.

[3 Story, 590.] [1]

Circuit Court, D. New Hampshire. May Term, 1845.

PLEADING IN EQUITY—AMENDMENTS—EXCEPTIONS —BANKRUPTCY OF PLAINTIFF.

1. The court may, for the purpose of avoiding unnecessary delays, entertain a motion to amend a bill in equity, at the same time that exceptions thereto are filed, and may require the defendants to answer the amended matter and the exceptions together.

[Cited in French v. First Nat. Bank, Case No. 5,099.]

2. Where, in the answer to a bill in equity, it was set forth, that as the plaintiff was a bankrupt, and his assignee was not made a party to the bill, the plaintiff was not entitled to relief; it was *held*, that the objection of bankruptcy should have been taken in limine by way of plea, and could not be insisted on to avoid exceptions taken by the plaintiff to the answer.

3. In the present case, exceptions were taken by the plaintiff to the answer, on the ground, that the statements of the defendants therein contained were not "to the best of their knowledge, remembrance, information, and belief," as required by the bill, and were imperfect and insufficient, and the exceptions were allowed by the court. It was *held*, that the defendant was bound to answer as to his information, and re-

1 [Reported by William W. Story, Esq.]

membrance, and belief, as well as to his knowledge.

[Cited in French v. First Nat. Bank, Case No. 5,099.]

Bill in equity. The bill in substance stated as follows:

That on or about the 22nd day of December, A. D. 1835, one James H. Bingham procured a loan from the Claremont Bank, for the sum of four hundred and fifty dollars, and for the security thereof signed a note with the said Bingham for the said sum, made payable to the president, directors and company of the Claremont Bank, on demand. And also, the said Bingham, afterwards, on or about the 16th day of January, A. D. 1836, obtained another loan from the said bank, for the sum of eight hundred dollars, for his sole benefit, and for the security thereof signed a note with the said Bingham, for the sum of eight hundred dollars, made payable to the said president, directors and company of the Claremont Bank, on demand. That the said Bingham, on or about the 15th of August, A. D. 1837, being indebted to the said bank in the sum of $13,563.38, or thereabouts, including the above two notes, and being pressed by the said bank for security on the same, assigned over to the said bank two certain promissory notes, one executed by one Samuel Patridge to the said Bingham, dated on or about the 20th day of March, A. D. 1834, on which was then or about that time due $10,789.09, and one executed by one Asa Wentworth, Junior, to the said Bingham, dated on or about the 5th day of August, A. D. 1837, for the sum of $5,000, both making the sum of $15,789.09, and made payable to order on demand, with interest annually; the said notes being a good and available security; which notes the said bank received of the said Bingham as collateral security for the said Bingham's debts to the said bank, among which were the two notes so signed by the plaintiff [Thomas B. Kittredge] as above set forth. That on or about the 12th day of December, A. D. 1839, the aforesaid notes of $450 and of $800, not being paid, were taken up at the said bank, and the two sums put into one note of $1250, and signed by the said Bingham, and the plaintiff as surety, and made payable to the said Claremont Bank, on demand. That on or about the 6th day of March, A. D. 1838, the said note of $1250 not having been paid, and the said Bingham having paid the interest thereon, it was taken up, and another note executed to the said president, directors and company of the Claremont Bank, for the same debt and the same sum, and again signed by the said Bingham, and the plaintiff as surety, payable on demand.

That, on or about the aforesaid 6th day of March, A. D. 1838, the plaintiff procured a loan from the said bank of $1250, for his own benefit, and gave his note therefor to the said bank, which was signed by said Bingham as surety, payable on demand. That

said bank requiring additional security of him for the last mentioned sum of $1250, so loaned to him, and for the note of $1250, so signed by your plaintiff as surety for said Bingham, the plaintiff did, on or about the 2nd day of April, A. D. 1838, execute to the said president, directors and company of the Claremont Bank, a mortgage deed of certain real estate, situate in the said Claremont, being the lot and dwelling house and buildings thereon, then occupied by your plaintiff, conditioned for the payment of the two aforesaid notes of $1250. That thereafterwards, from time to time, your plaintiff made payments on the said $1250, given for his benefit, and that, on or about the 3rd day of April, A. D. 1843, he paid the balance due on the same, and took up the said note, leaving the mortgage outstanding as collateral security for the other $1250 note, given for the sole benefit of the said Bingham.

That on or about the 5th day of December, A. D. 1839, Ormond Dutton, Austin Tyler, and Timothy Eastman, being liable as sureties to a large amount on the said Bingham's other liabilities, and the said Bingham being insolvent and in failing circumstances, and for the purpose of securing said Dutton, Tyler and Eastman, for such liabilities, and with the knowledge and approval of the said bank, the said Bingham did, on or about the aforesaid 5th day of December, A. D. 1839, assign and make over to the said Dutton, Tyler and Eastman, all the surplus and interest in the said Patridge and Wentworth notes, if any should remain after paying to the said president, directors and company, the said Bingham's liabilities for which said notes were assigned and transferred as collateral security, as heretofore set forth. And that the said Briggs and Stevens, on or about the 11th day of February, 1844, having assumed all the liabilities of the said Dutton, Tyler and Eastman, for the said Bingham to the said Claremont Bank, they, the said Dutton, Tyler and Eastman, with the knowledge and approval of the said bank, in consideration therefor, did on or about the aforesaid 11th day of February, A. D. 1844, assign and transfer to the said Briggs and Stevens, all their interest in the surplus and interest of the said Patridge and Wentworth notes, after satisfying the said bank all the demands for which the notes were pledged to said bank, as heretofore set forth.

That the plaintiff, on agreement with the said bank, on or about the 3rd day of April, A. D. 1841, deposited with the said bank the sum of $1256.88, or thereabouts, being the amount then due on the said note, on which the plaintiff was surety. The said bank agreed then and there to receive the same as satisfactory collateral security for the said note, instead and in lieu of the said mortgage, and for no other purpose whatever; and that the said bank, in consideration of the said deposit, did then and there, on the receipt of the said money, discharge the said mort-

gage, and deliver the same up to your plaintiff.

That the said Bingham, previous to the 2nd day of June, 1842, had become wholly insolvent, and unable to pay the said debts to the said bank, for which the said Patridge and Wentworth notes were pledged as collateral security as aforesaid; and that his insolvency was then well known to the said bank, and to the said Briggs and Stevens, and that the said notes so pledged as aforesaid would be the only available fund of the said Bingham for the payment of his liabilities to the said bank. But the said bank, and the said Briggs and Stevens, combined and confederated together to injure and defraud the plaintiff in the premises, and in the risk, delay and collection of the said Patridge and Wentworth notes. That the said bank, without the knowledge and consent of the plaintiff, on or about the 2nd day of June, A. D. 1842, delivered to the said Briggs and Stevens, the said Patridge's note (a small part only having been paid), and the said Briggs and Stevens made an arrangement with the said Patridge, and then and there took from the said Patridge a bond for the amount then due on the said note, secured by mortgage, payable on time by annual instalments in four or five years, as the plaintiff has been informed, and verily believes, and gave up the said note to the said Patridge to be cancelled, and the said bond and security were afterwards delivered to, and received by the said bank,—thereby ratifying the same without the knowledge or consent of the plaintiff; and did forbear to collect any part of the Wentworth note for a long time, when they could and ought to have done it.

That, on or about the 25th day of May, A. D. 1843, the said Bingham drew his order on the said bank in favor of the plaintiff, designating and requesting them to apply any monies by them received on his account, not then applied to any of his notes due to the said bank, to the payment of the said note of $1250, so signed by the plaintiff, as surety for the said Bingham, as aforesaid, and any monies thereafter received, till the said note be paid; which said order was thereafterwards, on or about the 30th day of May, A. D. 1843, presented to the said bank by the plaintiff, who requested them to make the application as designated in the said order and directions of the said Bingham. But the said bank utterly refused to comply with so just and reasonable a request, as they in equity and good conscience were bound to do, although they had then collected and received on the said Bingham's account, which had not been applied to any of the said Bingham's debts, sufficient to satisfy the said note of $1250, or nearly so, or have long since, and before the filing of this bill, received a sufficient sum.

That, on or about the 6th day of June, A. D. 1843, the plaintiff again requested the said bank to apply the monies, received on

the said collateral security, to the said note of $1250, signed by the plaintiff as surety, and to hold the said notes, so left by the said Bingham as collateral security, as before set forth, for the benefit of the plaintiff, and to indemnify him, as surety for the said Bingham.

That on or about the 22nd day of November, A. D. 1843, the sum of about $8000 being then due on the said notes of Patridge and Wentworth, the said bank, and the said Briggs and Stevens farther combining and confederating together to injure and defraud the plaintiff out of the said sum of $1256.88, and to compel him to pay the said note of $1250,—knowing the said Bingham to be wholly irresponsible and unable to pay the plaintiff the same,—and to defraud him out of the benefit of the collateral security, pledged by the said Bingham for the payment of the said $1250 note, with others, without the knowledge and consent of the plaintiff, came to an arrangement and agreement among themselves, whereby the said bank applied the said sum of $1256.88, as heretofore set forth, to the payment of the said Bingham's notes or liabilities, instead of collecting and applying the said Bingham's collateral paper as aforesaid. And the said Briggs and Stevens did then and there pay the said balance of the said Bingham's liabilities, which, together with the aforesaid sum of $1256.88, was much less than the sum due on the said Patridge and Wentworth's collateral paper. And the said bank did then and there, in violation of good faith and their trust, and in fraud of the plaintiff's rights and interests, deliver up the said collateral securities of the said Bingham, and also, the other notes given by the said Bingham to the said bank with the said $1250 note signed as surety by the plaintiff to the said Briggs and Stevens, who had no interest or claim to the said collateral security, till the said Bingham's liabilities to the said bank had been paid out of the said collateral paper, pledged for the payment of the same, or paid or caused to be paid by the said Bingham.

That the plaintiff has, at divers times, applied to the said bank to collect the said collateral debts, and apply the same in discharge of the said note of $1250, signed by him as surety for the said Bingham, and also, to keep and retain the said collateral debts, or a sufficient sum out of the same, to pay and discharge the said note of $1250, or in case he was obliged to pay the same, to retain the said collateral claims for his benefit as Bingham's surety. But they have refused so to do; all which actings and doings of the said defendants are contrary to equity and good conscience, and tend to the manifest injury of the plaintiff.

The interrogatories proposed in the bill, to the answers to which exception was taken by the plaintiff, run as follows: (1st) Whether or no the said James H. Bingham had a loan for his own benefit at the said Claremont Bank of $450, on or about the 22nd day of December, A. D. 1835, for which he gave his note signed by himself and the plaintiff as his surety, or at any other and what time, or any other and what sum? And also, another loan for his own benefit, from the said bank, on or about the 10th day of January, A. D. 1836, for $800, or at any and what time, or any other, and what sum, for which he gave his note, signed by himself, and the said plaintiff as surety, or how were the notes signed, and for whose benefit was the loan made? (2nd) Whether or no the two notes against the said Samuel Patridge and the said Asa Wentworth, Junior, or any other and what sums, were assigned over and deposited with the said bank, by the said Bingham, as collateral security, for the payment of the said Bingham's notes, to the said bank, including the aforesaid two notes of $450, and $800, and whether or no, the said notes were good and available notes at that time, and the makers thereof good and responsible? (3rd) Whether or no, the said Bingham, on or about the 2nd day of December, A. D. 1837, or at any other and what time, did pay up the interest and discount on the said notes of $450 and $800, and get them renewed, and put into one note of $1250, signed by the said Bingham and the said plaintiff as his surety? And whether or no the same note was again renewed at the said bank on or about the 6th day of March, A. D. 1838, the said Bingham paying the interest, and signed by the said Bingham and the plaintiff as his surety? (4th) Whether or no the plaintiff did obtain a loan at the said bank of $1250, on or about the 6th day of March, A. D. 1838, for his own use and benefit, or at any other and what time, and gave his note signed by himself, and the said James H. Bingham as his surety? If so, whether or no the plaintiff did thereafterwards, on or about the 2nd day of April, A. D. 1830, execute a mortgage deed to the president, directors and company of the Claremont Bank, of his house and lot, which he then occupied in the said Claremont, to secure the payment of the said loan of $1250, to himself, and also, for the further security of the payment of the other $1250 note, signed by him as surety for the said Bingham? If so, whether or no, the plaintiff did on or about the 3rd day of April, A. D. 1843, pay the balance due on the said note of $1250, so loaned to himself and for his own benefit, on which the said Bingham signed as his surety, and secured by the said mortgage deed, or at any other and what time, and take up the said note? (5th) Whether or no the said James H. Bingham, on or about the 25th day of May, A. D. 1843, requested the president, directors and company of the Claremont Bank, by writing or otherwise, of that or any other, and what date, to apply any monies already not applied, received, or which should thereafter be received on his account by the said bank, to the payment of the said

note of $1250, signed by the plaintiff as surety for the said Bingham, as set forth in this bill? If so, whether or no the said order or direction was afterwards, on or about the 30th day of the said May, presented to the said bank for acceptance, with a request that the application should be made agreeable to the said direction? And whether or no there were not monies then in the said bank, received on the said Bingham's account, not applied on any of the said Bingham's liabilities, sufficient to pay and discharge the said note of $1250, or any part thereof, and how much had the said bank received and not applied? And whether or no the said president, directors and company did neglect and refuse to make such application, and all sums thereafter received? (6th) Whether or no the plaintiff, by himself or his agent, on or about the 6th day of June, A. D. 1843, did again notify the said president, directors and company to apply the monies, collected on the said Bingham's said collateral securities, to the said note of $1250, so signed by the plaintiff, as surety for the said Bingham, and also, to hold and retain the said collateral securities, so pledged by the said Bingham, as before set forth, for the plaintiff's benefit and security? (7th) Whether or no the said president, directors and company, and the said Briggs and Stevens, or either, or which of them, on or about the aforesaid 22nd day of November, A. D. 1843, did enter into an arrangement, without the knowledge or consent of the plaintiff, whereby the said president, directors and company did then and there, at the request of the said Briggs and Stevens, or otherwise, apply and appropriate the aforesaid sum $1256.88, so deposited by the plaintiff, as collateral security as aforesaid, to the said president, directors and company, as set forth in the said bill, to the said Bingham's debts and liabilities, secured by the said Patridge and Wentworth notes, and deliver over to the said Briggs and Stevens the said demands against the said Patridge and Wentworth? If so, whether or no, the sum due on the said Patridge and Wentworth demands, was not more than sufficient to pay and discharge all the said Bingham's debts and liabilities to the said bank, for which the said demands were pledged? And whether or no the said president, directors and company did then deliver over to the said Briggs and Stevens, or either, or which of them, all the notes and obligations in favor of the said president, directors and company, against the said Bingham, including the said $1250 note, signed by the plaintiff as Bingham's surety? If so, what notes, obligations, or evidences of debts were so delivered over, and what has become of them? (8th) Whether or no the said Patridge and Wentworth's demands have since been collected, or any part thereof, and how much? (9th) Whether or no the plaintiff has not, at divers times, requested the said president, directors and company of the Claremont Bank, to make the application of the monies

collected on the said Bingham's collateral securities, in payment of the said $1250 note, and retain the said collateral security for his indemnity, in case he had it to pay?

The bill prays that the said bank may be decreed to pay back to the plaintiff, the said sum of $1256.88, with the lawful interest thereon, and all damages he may have sustained in the premises, and that the plaintiff may be forever discharged from all liability on the said note, or that the said bank be made responsible and chargeable for the said demands against the said Patridge and Wentworth, to be paid over when collected, for the use and benefit of the plaintiff, to the amount of the said $1256.88, and interest thereon, with due damages; or, that the said Briggs and Stevens be decreed to pay over the same to the plaintiff, or retain the said Patridge and Wentworth demands, to be received and collected by them, and pay over to the plaintiff the aforesaid sum of $1256.88, and the lawful interest on the same, and find surety for the performance of the same; and for such further or other relief in the premises as the nature and circumstances of the case may require.

The answer of the president, directors, and company of the Claremont Bank, set forth, that the said complainant filed his petition in bankruptcy on June 9th, 1842, and afterwards, on July 20th, 1842, he was declared a bankrupt, and John D. Prentiss, of Claremont, was duly appointed assignee of all his property, and rights of property. That, as the pretended claim, set up in and by the said bill, appears by the said bill to have accrued before the filing of the said complainant's petition, these defendants are advised, that the said complainant's right and interest to the said pretended claim were, at the time of the decree of the said court, appointing the said assignee, and now are, vested in the said assignee, and not in the said complainant, and these defendants claim the same benefit from the facts above stated, as if they had set forth the same by way of plea in this cause, and for the reasons, and under the circumstances aforesaid, they are advised, and insist that the said complainant is not entitled to any relief against them, touching the matters complained of in the said bill.

The answers to the interrogatories in the bill, which were excepted to by the plaintiff, were as follows: (1st) In answer to the first interrogatory, contained in the bill of complaint aforesaid, the defendants say: That it appears from the books of the said bank, that on the 22d day of November, A. D. 1835, a note signed by James H. Bingham, and Thomas B. Kittredge, both as principals, for the sum of $450, was discounted at the said bank; and that on the 19th day of January, A. D. 1836, another note signed by James H. Bingham, and Thomas B. Kittredge, both as principals, for the sum of $800, was discounted at the said bank; and that on the 22d day of August, A. D. 1837, the aforesaid note for

$450 was paid; and on the same day another note, signed by the said Bingham and Kittredge, both as principals, was discounted at the said bank for the sum of $450. That on the 29th day of August, A. D. 1837, the aforesaid note for the sum of $800, was paid to the said bank, and on the same day, a note for the same sum, signed by the said Bingham and Kittredge, both as principals, was discounted at the said bank; but whether the said loans, or any of them were for the sole benefit of the said Bingham, these defendants cannot state, and have not the means of stating, as the fact does not appear on the books of the said bank. (2nd) And these defendants, in answer to the second interrogatory, say: That on the 15th day of August, A. D. 1837, the said Bingham was indebted to the same bank in the sum of $4,750 on discounted notes, and in the farther sum of $9,337.91, on cash notes; one of the said cash notes of $2,000, was signed by the said Bingham and William A. Kent, and George Kent,—amounting in the whole to the sum of $14,087.91. The said sum of $4,750 was made up of the following notes, viz.: A note signed by the said Bingham, and James Tewksbury, both as principals, dated December 13th, A. D. 1836, for $1000; a note signed by the said Bingham and Kittredge, both as principals, dated January 19th, A. D. 1836, for $800; a note signed by the said Bingham and Kittredge, as principals, dated December 22nd, A. D. 1835, for $450; a note signed by the said Bingham and Roswell Elmer and Austin Tyler, all as principals, for $2,500, dated May 17th, A. D. 1836. That whether the said bank called on the said Bingham for additional security, or whether it was otherwise furnished, these defendants cannot state, and have not the means of stating. That on the 15th day of August, A. D. 1837, the said Bingham assigned and transferred to the said bank one note signed by Samuel Patridge, of Pottsdam, in the state of New York, payable to the said Bingham or his order, on which there was then due about $10,789.09, and another note signed by Asa Wentworth, Jr., of Rockingham, in the state of Vermont, payable to the said Bingham, or his order, on which was then due about the sum of $5,000, as collateral security for what the said Bingham was then owing the said bank. As to the responsibility of the said Patridge, these defendants say, that they have repeatedly pressed the said Patridge for payment, but have never been able to collect more than what will hereafter appear. It was supposed by the bank, that Patridge desired to be sued, so as to compel the bank to take on their execution his real estate. The bank were often requested and urged by the said Briggs to collect the said note. The bank knew nothing, personally, of him. As to the responsibility of the said Wentworth, they say that he was supposed to be responsible, but they could not get payment from him, but finally succeeded in getting collat-

eral security for a considerable portion of the debt, by consenting to delay. (13th) In answer to the thirteenth interrogatory, these defendants say: That on the 22nd day of November, A. D. 1843, the said bank, with the knowledge and consent of the said Briggs, did apply the said sum of $1,256.88, deposited in the said bank by the said Kittredge, to the payment of the note of $1,250, signed by Bingham as principal, and Kittredge as surety, agreeably to the receipt, dated on the third day of April, A. D. 1843, given by the cashier on behalf of the bank, to the said Kittredge for the said sum; by which receipt the bank reserved to themselves, the right to use the said deposit, by paying the same on the said note, as they should judge proper. The sums due on the Patridge and Wentworth notes were more than sufficient to discharge the debts for which they were pledged by Bingham to the bank. The bank did not then, or at any other time, deliver to the said Briggs and Stevens, or either of them, any notes or obligations whatever, in favor of the bank, against the said Bingham, excepting the Eton Brainard note and mortgage before mentioned, which sometime afterwards was delivered by the bank to the said Briggs, he having an assignment of Bingham's interest in the note and mortgage, and producing to the said bank an order from the said Bingham for the delivery thereof to him; nor did the bank ever deliver to the said Briggs and Stevens, or either of them, the said note of $1,250. The said plaintiff's $1,250 note is at the bank. In answer to the fifteenth interrogatory, these defendants say: That the said Kittredge has often made such requests to the bank. And these defendants deny all and all manner of unlawful combination and confederacy, wherewith they are by the said bill charged, without this, that if there is any other matter, cause, or thing, in the said complainant's said bill of complaint contained, material, or necessary for these defendants to make answer unto, and not herein and hereby well and sufficiently answered, confessed, traversed, and avoided or denied, it is true to the knowledge or belief of these defendants. All of which matters and things, these defendants are ready and willing to aver, maintain and prove, as this honorable court shall direct; and humbly pray to be hence dismissed, with their reasonable costs and charges in this behalf, most wrongfully sustained.

The answer of William Briggs and Enos Stevens corresponded, in substance, to the answer of the Claremont Bank. The plea was also the same. Their answers to the interrogatories of the plaintiff, which were objected to by him, were as follows: (1) In answer to the first interrogatory, they say: That they have no knowledge as to the matters and things in the said interrogatories contained, excepting what they have drawn from the answer of the said bank, to the said plaintiff's said bill. (2nd) In answer to the second

interrogatory, they say: That they have heard from the said Claremont Bank, and from the said Bingham, that the said Bingham was indebted to the said bank, on the 15th day of August, A. D. 1837, but do not know the amount of the said indebtedness. And whether any notes signed by the said Kittredge and Bingham, made any part of the said indebtedness,—that they have no doubt that the said Patridge and Wentworth notes were by the said Bingham transferred to the said Claremont Bank, as collateral security for what he then owed the bank, and the said Wentworth and Patridge were, as these defendants believe, then reputed to be responsible. (3rd) In answer to the third interrogatory, they say: That they have no knowledge as to any matters inquired of in the said interrogatory. (4th) No knowledge. (6th) In answer to the sixth interrogatory, they say: That on or near the 11th day of February, A. D. 1841, the said Dutton, Tyler and Eastman, with the knowledge and approval of the said Claremont Bank, did transfer to these defendants all their interest in the Patridge and Wentworth notes, and also conveyed to them several parcels of real estate, including a mortgage against Prentice Sholles; the consideration for all which, was the assumption by these defendants of certain liabilities for the said Bingham, which they, the said Dutton, Tyler and Eastman, had theretofore assumed to the bank, and also certain other liabilities for the said Bingham, which they, the said Dutton, Tyler, and Eastman, had theretofore assumed for the said Bingham, the whole amounting to about $14,000; and the transfer and conveyance from the said Dutton, Eastman and Tyler was an absolute and unconditional sale, made with the knowledge and consent of the said Bingham, and by an instrument in his own hand-writing. (10th and 11th) In answer to the tenth and eleventh interrogatories, they say: That they have no knowledge of the matters in the said interrogatories inquired about. In answer to the twelfth interrogatory, they say: That on or near the 22nd of November, A. D. 1843, the sum of about $7,200, remained uncollected on the Patridge demand, and about $800 on the Wentworth note. (13th) Their answer to the thirteenth interrogatory, was identical with that of the Claremont Bank. As to the fourteenth and fifteenth interrogatories, they say: That they know nothing about the matters inquired of in the said interrogatories.

To the sufficiency of the answer by the bank the plaintiff filed the following exceptions: (1st) For that the bank, in their answer to the first interrogatory, have not answered and set forth to the best and utmost of their knowledge, remembrance, information and belief, whether or no the loans of the $450 and $800 were made for said Bingham's benefit—but their answer, to wit: "from the appearance of the said books of the said bank" alone is insufficient. (2nd) For that the said bank, in their answer to the second and general interrogatories, and the allegations in the bill, have not answered and set forth to the best and utmost of their knowledge, remembrance, information and belief, whether or no it has been the custom and usage of the bank, in taking notes, for all the signers to execute the notes as principals—and why they are so taken? And whether or no, said two notes of $450 and $800, were not, at all times, reckoned and accounted by the bank as Bingham's debts, and included in said Bingham's debts, secured by the Partridge and Wentworth notes. Whether or no the said Partridge and Wentworth notes were payable on demand and interest; whether or no, they were dated, and what date; whether or no, according to the best of their information and belief, said notes were good and available at the time (when they were transferred to said bank), and the makers thereof good and responsible? And for that the said bank has set forth their supposition that Partridge desired to be sued, so as to compel said bank to take his real estate on their execution, but have not stated any reasons for said supposition, and do not set forth what means and diligence they took to collect said notes. (3d) For that the said bank have not to the best and utmost of their knowledge, remembrance, information and belief, answered and set forth, whether or no it has been the custom and usage of the bank, when a note has been renewed, to make an entry on their books, "Paid," instead of "Renewed," and for a renewed note, to enter it as a new loan? whether or no, minutes and records were kept of the meetings and doings of the directors, and of notes received and discounted? And whether or no, the entries on their books show, who paid the interest on notes delayed, renewed or discounted? And said bank has not answered whether, according to the best of their information and belief, said Bingham did pay up the interest and discounts on said notes of $450 and $800, and got them renewed and put into one note of $1250, signed by said Bingham and said orator as his surety, and whether or no the same note was again renewed at said bank on or about the 6th day of March, A. D. 1838, said Bingham paying the interest, and signed by said Bingham and said orator as his surety? (5th) For that the said bank have not, to the best and utmost of their knowledge, remembrance, information and belief, made "a full, true, direct and perfect answer" to the charges and allegations in the bill of complaint and interrogated about in the thirteenth and general interrogatories. Whether or no, an arrangement or settlement was made between the bank and the said Briggs and Stevens, or either, and which of them, in relation to said Bingham's debts and liabilities to said bank, on the 22d day of November, A. D. 1843, and what that arrangement or settlement was—and what said Bingham's liabilities were at said bank; whether or no, the note of $1250, signed by Kittredge as surety for Bingham, and for which

the sum of $1256.88, was deposited as collateral security by said Kittredge, was accounted as a debt of said Bingham, and adjusted as such, in such settlement; and what amount of collateral securities pledged by said Bingham remained over and above the payment of all said Bingham's debts to said bank. And whether or no, the balance, or evidences of such balance, was paid or delivered over to said Briggs and Stevens, or either and which of them, or applied to any other liabilities, and what other? And whether or no, the sums due on the said Partridge and Wentworth demands, were more than sufficient to discharge said Bingham's debts, not including the said sum of $1256.88? Whether or no this settlement was made and arranged without the knowledge and consent of the said Kitredge? Whether or no, the said bank did deliver over the said Partridge and Wentworth demands to the said Briggs and Stevens, or either and which of them, without the knowledge and consent of the said Kittredge, for what purpose, and under what conditions and arrangements? (6th) For that the said bank have not answered and set forth the matters and things inquired about in the fifteenth interrogatory, without referring to said interrogatory, which is insufficient. In all of which particulars, the said complainant excepts to the answer of the said president, directors and company of the Claremont Bank, as evasive, imperfect, and insufficient, and hereby prays that said president, directors and company of the Claremont Bank, may be compelled to put in a full and sufficient answer thereto.

The following exceptions were filed to the answer of Briggs and Stevens. (1st) For that the said Briggs and Stevens have not sufficiently set forth the matters and things inquired about, under the first interrogatory in the said bill, and that their knowledge of the matters and things therein inquired about, drawn from the answers of the bank, is insufficient. (2nd) For that the said Briggs and Stevens have not, to the best and utmost of their knowledge, remembrance, information, and belief, answered and set forth under the second interrogatory. The statement that they have "no doubt they were transferred as collateral security," is insufficient, without a full and direct answer, as to their knowledge, remembrance, information, and belief. (3rd) For that the said Briggs and Stevens have not set forth the matters and things inquired about in the 3d, 4th, 10th, 11th, 14th, and 15th interrogatories, nor of their information and belief thereof, and that a reference to the matters and things inquired about, without setting forth the same or substance thereof, is insufficient. (4th) For that the said Briggs and Stevens have not, to the best and utmost of their knowledge, remembrance, information and belief, fully answered and set forth the matters and things inquired about in the 6th interrogatory, to wit. "what interest was assigned, and for what purpose was it done, and for what consideration?" The answer being insufficient to state "certain liabilities for the said Bingham, which they, the said Dutton, Tyler and Eastman, had theretofore assumed," &c., without answering and setting forth what those other liabilities were, and their amount. (5th) For that the said Briggs and Stevens have not, to the best and utmost of their knowledge, remembrance, information and belief, fully answered the matters and things alleged in the said bill of complaint, and interrogated under the 13th and general interrogatories. (6th) For that the said Briggs and Stevens have not, to the best and utmost of their knowledge, remembrance, information and belief, answered and set forth as inquired about in the 14th interrogatory, but they have neglected and refused to answer the same, or to set forth the matters and things therein inquired about. (7th) For that the said Briggs and Stevens have not, to the best and utmost of their knowledge, remembrance, information and belief, answered or pretended to answer, the matters and things alleged and charged in the bill, but have confined their answers exclusively upon the interrogatories in the said bill, without sufficiently setting forth the subject matters inquired about. In all which particulars, the said complainant excepts to the joint answers of the said Briggs and Stevens, as evasive, imperfect and insufficient, and hereby prays that the said Briggs and Stevens may be compelled to put in full and sufficient answers thereto.

STORY, Circuit Justice. Some suggestion has been made in relation to the application made to amend the bill at the same time that exceptions were filed, as if it imported a positive irregularity. But this is not so; for it is entirely competent for the court, in order to avoid unnecessary delays, to grant leave to amend the bill, and, if the exceptions are allowed, to require the defendants to answer the amended matter and the exceptions at the same time, allowing a suitable time to accomplish the same.

An objection has been taken as preliminary in its nature, and superseding the examination of the exceptions, if it be sustained by the court. The objection is, that the plaintiff became bankrupt, and obtained his discharge before the present suit was brought, and that his assignee is a proper party to the suit. It might be sufficient to say, that in the present stage of these proceedings, upon exceptions to the answer, the objection does not properly arise, for as the defendants have consented to answer, and have not taken the objection of bankruptcy in limine, by way of plea, but have consented to answer, they ought to answer fully to the merits. But in truth, there is nothing in the objection itself, with reference to the gravamen of the present bill. The plaintiff became a bankrupt in July, 1842; and the cause of action, as stated in the bill, arose from transactions originating

in April, 1843, and from a misapplication of monies, on which the assignee had and could have no interest under the bankruptcy. These monies did not constitute any part of the assets of the bankrupt before his bankruptcy.

The defendants have declined arguing the exceptions, and it seems to me very properly, for, in substance, they are all well founded. For the most part they fall within the reasoning of the case of Byam v. Brooks [Case No. 1,949], and most of the cases cited by Story in Equity Pleading (sections 854, 855, 855a). It does not seem necessary to make any distinction between the answer of the bank, and the joint answer of Briggs and Stevens, as to the nature and character of the exceptions. I shall, therefore, allow the exceptions; and as the amendments were received by the district judge, I presume, that they were deemed by him as proper foundation for leave, to amend; and therefore I shall direct that the amendments and the exceptions be answered by the defendants on the rule day (the first Monday) in September next, unless further time shall then be allowed by the district judge. Neither party, however, is entitled to costs, for both parties have placed themselves in a predicament to require the court to abstain from the allowance; the plaintiff by asking for leave to amend, and the defendants by filing insufficient answers.

· [Exceptions were filed to defendants' amended answers, and said exceptions were sustained. Case No. 7,859.]